IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES RICHARDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV913 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles Richardson ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits on May 18, 2011 (protective filing date May 11, 2011), alleging a disability onset date of December 14, 2009. (Tr. at 30, 81, 90, 174-77.)[1]  His application was denied initially (Tr. at 81-89) and upon reconsideration (Tr. at 90-106). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").  (Tr. at 124.)  Plaintiff attended the

_____

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

subsequent hearing on June 19, 2013, along with his attorney, an impartial medical expert, and an impartial vocational expert. (Tr. at 30.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 40), and, on August 26, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.

However, if the claimant establishes an inability to return to prior work, the analysis proceeds

to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

exist which the claimant could perform, despite [the claimant's] impairments."  Hines, 453

F.3d at 563.  In making this determination, the ALJ must decide "whether the claimant is able

to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d

at 264-65.  If, at this step, the Government cannot carry its "evidentiary burden of proving

that [the claimant] remains able to work other jobs available in the community," the claimant

qualifies as disabled.  Hines, 453 F.3d at 567.

III.    DISCUSSION

        In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful

activity" since his alleged onset date.  Plaintiff therefore met his burden at step one of the

sequential evaluation process.  At step two, the ALJ further determined that Plaintiff suffered

from the following severe impairments:  degenerative disc disease of the cervical spine, muscle

myalgia with cramping, obstructive sleep apnea, and depression.  The ALJ found at step three

that none of these impairments, singly or in combination, met or equaled a disability listing.

(Tr. at 32.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform

light work with a further limitation to simple, routine, repetitive tasks.  (Tr. at 33.)  Based on

this determination, the ALJ found under step four of the analysis that Plaintiff could not return

to any of his past relevant work.  (Tr. at 39.)  However, based on the vocational expert's

testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work

experience, and RFC, he could perform other jobs available in the national economy, and therefore was not disabled under the Act. (Tr. at 39-40.)

Plaintiff now argues that the ALJ erred in (1) failing to include Plaintiff's lumbar degenerative disc disease and resulting stenosis as severe impairments at step two, (2) mischaracterizing the state agency physician's opinion, and (3) failing to adequately explain the weight assigned to the opinions of Dr. Rhonda Gabr, Plaintiff's treating neurologist. (Pl.'s Br. [Doc. #12] at 3.) The Court considers these contentions below. Ultimately, because the ALJ failed to consider or even mention Plaintiff's medical records from 2012 and 2013, which include evidence of lumbar degenerative disc disease and an additional treating physician opinion from Dr. Gabr, the Court is unable to conclude whether substantial evidence supports the ALJ's determination, and remand is necessary so that the ALJ can address this medical evidence in the first instance.

A.      Lumbar Degenerative Disc Disease

Plaintiff first challenges the ALJ's omission of lumbar degenerative disc disease and resulting stenosis from his severe impairments at step two of the sequential evaluation process. On this issue, the Commissioner contends that any such omission was harmless because the ALJ proceeded with the sequential evaluation process. (Def.'s Br. [Doc. #14] at 7-8.) Indeed, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted); see also Wake v. Astrue, No.

2:11CV35, 2012 WL 6851168, at *4 (W.D.N.C. Dec. 4, 2012) <u>report and recommendation</u> <u>adopted,</u> No. 2:11CV35, 2013 WL 145764 (W.D.N.C. Jan. 14, 2013).

However, in this case, the ALJ did not discuss the medical evidence regarding Plaintiff's lumbar degenerative disc disease at any point in the sequential process. The medical records reveal that on June 20, 2012, Plaintiff saw his radiologist, Dr. Gabr, for what was assessed as "sciatica/S1 nerved root irritation." (Tr. at 443.) Plaintiff presented with "sciatica type pain," mild weakness in his left extremity, and a slight limp. (Tr. at 442-43.) Dr. Gabr ordered an MRI of his L/S spine. (Tr. at 443.) The subsequent MRI on June 28, 2012, revealed "moderate-severe disc degeneration, with desiccation and height loss. Left paracentral disc extrusion is present. This leads to mild flattening of the left ventral thecal sac surface, however does lead to severe left lateral recess stenosis at the disc level. As such, there is posterior displacement and compression of the traversing left S1 nerve root." (Tr. at 441.) Those results were reviewed with Plaintiff on July 11, 2012, and the examination notes indicate that "[s]itting or standing for long or short period[s] of time can exacerbate the leg pain," and that Plaintiff's "[s]trength in left lower extremities is decreased due to pain." (Tr. at 437-40.) Plaintiff ultimately underwent three epidural injections for his lower back pain during the latter half of 2012 at the Blue Ridge Surgery Center with Dr. Yerramsetty. (Tr. at 501, 520, 522, 523.) During that time, he continued to see Dr. Gabr for his lower back pain (Tr. at 501, 497-99, 495-96, 487-89.) On October 8, 2012, Dr. Gabr noted that Plaintiff had "LS radiculopathy," that it was hard for him to be active, that he needed to recover, and that he was not able to work. (Tr. at 495.) Subsequently, on March 11, 2013, Plaintiff saw Dr. Buttram at Rex Neurosurgery and Spine for his low back pain, and Dr. Buttram noted that Plaintiff had

"degenerative disk disease at L4-L5 as well as L5-S1[, with] left paracentral disk herniation at L5-S1 causing severe left lateral recess stenosis and left S1 nerve root displacement." (Tr. at 518.) On examination, Plaintiff had a "positive straight leg raise on the left." (Id.) Dr. Buttram discussed options, including physical therapy and/or surgery involving a "left L5-S1 Metrix diskectomy." (Id.) Plaintiff elected to try physical therapy before considering surgery. (Id.)

Notably, the ALJ's decision does not address or even mention any of this medical evidence. As a result, there is no discussion of whether Plaintiff's lumbar spine impairment meets Listing 1.04, which pertains to disorders of the spine, see 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04, nor is there any discussion of whether or how Plaintiff's RFC accounts for such impairment. Such omissions leave the Court without a sufficient basis on which to undertake judicial review. See Hudson v. Colvin, No. 7:12-CV-269, 2013 WL 6839672, at *4, 8 (E.D.N.C. Dec. 23, 2013) (noting that "[i]t hardly bears repeating that an ALJ is required to consider all relevant evidence and to sufficiently explain the weight he gives to probative evidence[,]" and ordering remand where the ALJ's "silence regarding [relevant medical assessments] raises the question whether [the ALJ] even considered this evidence"). The Court acknowledges that an ALJ's "failure to discuss every specific piece of evidence does not establish that [he] failed to consider it." Mitchell v. Astrue, No. 2:11-CV-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal quotation and alteration omitted). However, the ALJ's decision must still ultimately "reflect that [he] conducted a thorough review of the evidence before [him]." Id.[4]

---

[4] The ALJ's decision does not mention Plaintiff's treatment by Dr. Buttram or Dr. Yerramsetty at all. With respect to Dr. Gabr, the ALJ's decision reflects consideration of Dr. Gabr's treatment records from 2010 and 2011, but the ALJ's decision does not mention or address the medical records from June 2012 through July

Of course, there may be reasons that the ALJ could have chosen to reject Plaintiff's evidence and contentions regarding his lower back pain, including, for example, that other records indicate Plaintiff's strength, reflexes, and gait otherwise remained normal throughout the period at issue, or that the evidence regarding Plaintiff's lumbar condition did not result in back-related restrictions beyond those included in the RFC, as the Commissioner contends. However, if the ALJ considered and rejected this evidence, he was required to "say so and explain why." Carter v. Colvin, No. 5:12-CV-736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014) (internal quotation and alteration omitted). Decisions regarding whether to credit or reject certain evidence, or whether certain impairments require restrictions in the RFC and how those restrictions should be formulated, are within the province of the ALJ, not this Court. See Panna v. Colvin, No. 1:14CV229, 2015 WL 5714403, at *4 (W.D.N.C. Aug. 31, 2015) (stating that "[it] is not for this Court to determine Plaintiff's RFC, and the Government[] may not avoid remand by offering after the fact rationalizations for the ALJ's decision. Nor will the Court speculate as to what the ALJ did or did not consider. The RFC determination is for the ALJ, and the decision must provide sufficient reasoning to allow this Court to conduct meaningful review").

In light of the ALJ's failure to address any of this medical evidence, the Court cannot undertake a review of the decision, given the lack of any explanation as to whether and how the evidence of this impairment was considered. Therefore, it appears that remand is required.

---

2013. It is not clear why those records were not included in the ALJ's decision, but absent some explanation by the ALJ, this Court cannot determine whether the ALJ's decision was supported by substantial evidence.

B.     State agency physician's opinion

Plaintiff also contends that the ALJ mischaracterized the opinion evidence offered by state agency physician Dakota Cox.  Specifically, Plaintiff notes that the ALJ erroneously described Dr. Cox's opinion as finding Plaintiff capable of light, rather than sedentary, work.[5] Plaintiff contends that the ALJ's reliance on this inaccuracy in assessing Plaintiff's RFC rendered the RFC assessment unsupported by substantial evidence.  In response, the Commissioner contends that this error is harmless in light of the ALJ's subsequent identification of sedentary jobs at step five of the sequential analysis.[6]  As to this dispute, the Court concludes that since remand is required based on the above discussion in Part A, there is no need to undertake a harmless error analysis on this issue at this time, and any determination on remand can consider Dr. Cox's opinion as appropriate.

---

[5] The ALJ's decision includes two references to Dr. Cox's opinion.  In the first, he notes that the record contains a State Agency Physical Residual Functional Capacity assessment form completed on March 7, 2012 by Dakota Cox, M.D., in which the claimant was assessed as being able to do the following:  lift less than 10 pounds frequently, and 10 pounds occasionally; stand and/or walk for about six hours in an eight hour workday; sit for about six hours in an eight hour workday; and do unlimited pushing and pulling.  Dr. Cox concluded that the claimant could frequently stoop, kneel, crouch and crawl and could occasionally climb ramps, stairs, ladders, ropes and scaffolds, and balance.  In addition, this physician opined that the claimant needed to avoid concentrate exposure to hazards.
(Tr. at 37-38.)  The above limitation to lifting no more than 10 pounds at a time equates to sedentary work, rather than light work, which involves lifting up to 20 pounds.  Compare 20 C.F.R. § 404.1567(a) and (b).  In addition, Dr. Cox included limitations on climbing ladders, ropes, or scaffolds.  Nevertheless, just two paragraphs later, the ALJ's decision states that "[t]he State agency medical and psychological consultants opined that the claimant was capable of light exertion and performing simple, routine, repetitive tasks."  (Tr. at 38.) The ALJ assigned "significant weight" to these opinions.

[6] After identifying jobs available in significant numbers in the national economy for an individual capable of the light work as set out in the RFC, the vocational expert, at the request of the ALJ, went on to identify three jobs available in significant numbers for an individual of Plaintiff's age, education, and work experience, but who is capable of only sedentary work. (Tr. at 76-77.)

C.     Treating physician's opinion

Finally, Plaintiff contends that the ALJ failed to analyze Dr. Gabr's opinions in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527(c), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. In addition, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d)(1).

Where an ALJ declines to assign controlling weight to a medical opinion, he must "'explain in the decision the weight given' thereto and 'give good reasons in his . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(c)(2)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

In the present case, Dr. Gabr completed a Physical Residual Functional Capacity Questionnaire on August 26, 2011 ("the 2011 opinion"), after treating Plaintiff for muscle cramps for approximately ten months. (Tr. at 373-78.) She noted objective findings including elevated levels of creatine kinase (CK), abnormal EMG findings, and "fasciculations of involved muscles" (Tr. at 373) in addition to the following functional abilities: the ability to stand and walk less than two hours and sit for at least six hours in an eight-hour workday; periodically shift positions and take unscheduled breaks; occasionally lift up to ten pounds; occasionally twist or stoop; rarely crouch or climb; reach, grasp, and turn objects less than 10% of the time; and perform fine finger manipulations 50% of the time (Tr. at 374-77). Dr. Gabr further posited that Plaintiff would likely miss more than four days of work per month due to his symptoms, noting that these symptoms "are best managed by minimizing exertion or sudden movement, rest, and hydration." (Tr. at 377-78.)

The ALJ gave little weight to Dr. Gabr's 2011 opinion, explaining that the extreme limitations posited by Dr. Gabr "are not consistent with her record of treatment, and not

supported by the evidence of record or objective evidence." (Tr. at 36.) The ALJ also noted

that, in formulating her opinion, Dr. Gabr "apparently relied quite heavily on the subjective

report of symptoms and limitations provided by [Plaintiff]," despite the existence of "good

reasons for questioning the reliability of [Plaintiff's] subjective complaints." (Id.) Plaintiff

now argues that the ALJ's analysis of Dr. Gabr's opinion "was not sufficiently specific to make

clear the reasons for the weight given." (Pl.'s Br. at 12.)

In response, Defendant notes multiple bases on which to conclude (1) that the ALJ

adequately explained the weight given to Dr. Gabr's 2011 opinion and (2) that the

determination was ultimately supported by substantial evidence. However, even if the Court

agreed with the Commissioner on these points with respect to the 2011 opinion, the ALJ's

decision does not include any analysis of additional explanations and opinions provided by

Dr. Gabr in 2012 and 2013, including a treatment note from June 20, 2012, stating that "it

would be very difficult for this patient to sustain meaningful employment and there are

numerous jobs he simply cannot do," an October 9, 2012 treatment note, opining that it was

hard for Plaintiff to be active and that he was unable to work, and a June 11, 2013 letter, stating

that Plaintiff has "severe, long-lasting and disabling muscle cramps with minimal exertion"

with "consistently abnormal laboratory studies," as well as "severe obstructive sleep apnea

[with] shortness of breath with trivial exertion," and that over time, Plaintiff "has become

more disabled by the muscle cramping and dyspnea" such that he was not capable of sustaining

any meaningful employment. (Tr. at 443, 495, 557.) The ALJ did not discuss or acknowledge

any of these additional opinions provided by Dr. Gabr, the treating physician. The

Commissioner contends that these opinions are opinions on issues reserved to the

Commissioner and therefore are not entitled to any special significance. However, the ALJ did not provide this or any other reason for discounting the opinions, and most significantly did not mention the opinions at all.[7] Ultimately, the Court need not address this issue further in light of the remand required above in Part A, and any future determination can include all of the appropriate medical records and opinions as part of the administrative review.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 26th day of February, 2016.

                               /s/ Joi Elizabeth Peake
                               United States Magistrate Judge

---

[7] Indeed, as noted above, the ALJ did not mention or address any of the medical records from June 2012 through July 2013.